IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>v.<br><br>**PAIGE R. DAVIS,**<br><br>    Defendant. | Case No. 21-CR-30036-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Suppress Evidence and memorandum in support filed by Defendant Paige R. Davis (Docs. 25, 26) along with a response to Davis's motion filed by the United States (the "Government") (Doc. 28). For the reasons set forth below, the motion is **DENIED**.

## BACKGROUND

Davis and the Government agree on a simple set of facts. On December 8, 2020, St. Clair County Officer Xavier Blackburn and other law enforcement were tasked with serving an arrest warrant on Davis and taking him into custody. Davis had been charged with three counts of aggravated battery (Docs. 26, 28). After briefing on the exterior part of the residence, officers formed a perimeter around the address where they believed Davis resided along with the homeowner, Antoinette Ewing-Jimerson (Doc. 26, Doc. 28-1). As they approached the front door, Davis exited with a non-vicious leashed dog and the officers took him into custody without resistance (Docs. 26, 28-1). Davis stated that there were children in the residence, and the officers then

entered the residence and escorted one adult and one child out (Docs. 26, 28-1). The officers continued to search the residence and discovered a firearm leaning against the wall of an open closet in a bedroom belonging to Davis (Docs. 26, 28-1).

After this search, Ewing-Jimerson arrived and signed a consent form allowing the officers to conduct a search of the residence (Docs. 26, 28-1). After the officers retrieved the gun and exited the residence, they passed by Davis, who remarked, "Hey, where are you going, that's my gun" (Docs. 26, 28-1).

In March 2021, a Federal Grand Jury indicted Davis, charging him with possession of a firearm by a felon related to the December 2020 incident, in violation of 18 U.S.C. § 922(g)(1). On May 26, 2021, Davis moved to suppress the firearm seized during his arrest in December 2020 (Doc. 25). Davis argues that the officers lacked a reasonable basis for a protective sweep of the residence. Additionally, Davis claims that Ewing-Jimerson's consent was both tainted by the illegal search and invalid because Davis was still at the residence at the time of the search but was never asked to provide his consent.

The Government argues that a protective sweep was necessary in this case, as the officers were unsure as whether the disclosed children inside of the home presented a safety threat to the officers. This threat grew when the officers found one adult and one child inside the residence. Furthermore, the Government argues that police concern for the safety of individuals inside of the home constituted the exigent circumstances necessary to justify entry without a warrant. Finally, the Government argues that Ewing-Jimerson subsequently consented to a search of the entire residence and that the consent was untainted by the initial entry into the house.

**LEGAL STANDARD**

A motion to suppress seeks to exclude evidence obtained in violation of a defendant's constitutional rights. In *Simmons v. United States*, the Supreme Court explained, "[i]n order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, this Court long ago conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968).

However, the exclusionary rule does not always apply in cases where a search violated the Fourth Amendment. The Supreme Court has declared that exclusion "has always been our last resort, not our first impulse." *Herring v. United States*, 555 U.S. 135, 140 (2009) (citing *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). "The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free." *Id.* (citing *United States v. Leon*, 468 U.S. 897, 908 (1984)). Ultimately, the Court has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." *Id.*

Furthermore, The Court has determined that in certain circumstances, police officers can lawfully conduct a warrantless search. In *Terry v. Ohio*, the Court ruled that "police conduct, necessarily swift action predicated upon the on-the-spot observations of the officer on the beat… as a practical matter could not be, subjected to the warrant procedure." *Terry v. Ohio,* 392 U.S. 1, 20 (1968). The Court has recognized that as a precautionary matter and without probable cause or reasonable suspicion, police officers can conduct "protective sweeps" by looking in closets and

other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. However, this sweep must be based on "specific and articulable facts" that lead officers to believe there are individuals on the premises that pose a danger. *Maryland v. Buie,* 494 U.S. 325, 327 (1989).

Another exception is when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quoting *Mincey v. Arizona,* 437 U.S. 385, 394 (1978)). The Seventh Circuit has deemed searches without a warrant lawful when the exigent circumstances require immediate action. *United States v. Jenkins,* 329 F.3d 579, 581 (7th Cir. 2003).

## ANALYSIS

It is important to note that, according to Blackburn's report, the officers had no issue detaining Davis; he was arrested without incident and his dog appeared to be non-vicious (Doc. 28-1). Only specific facts that led the officers to believe that those inside of the home threatened their safety would provide justification for the alleged protective sweep. Here, the lack of detail of Davis's statement that there were children in the house provides justification for the protective sweep.

In *Maryland v. Buie*, the Supreme Court articulated that police officers could "assure themselves" that the premises of the arrest were not harboring other dangerous individuals by conducting a protective search. Moreover, "officers should not be forced to suffer preventable risk of ambush, even where a location is so isolated that the officers could conceivably be protected without entering the area." *United States v. Burrows,* 48 F.3d 1011, 1013 (7th Cir. 1995). Multiple cases from the Seventh

Circuit have given police officers considerable autonomy in conducting protective sweeps when they are made aware of the presence of others on the premises. In *United States. v. Contreras*, the Seventh Circuit upheld the District Court's determination that the presence of another person justified the search. 820 F.3d 255, 269 (7th Cir. 2016) ("Having heard the presence of another person, the police were entitled to sweep the house for their own protection."). In *United States v. Henderson*, police officers, after detaining an individual, "did not know how many occupants or what the occupants were doing inside the house;" as a result, the Court found that their search was considered lawful. 748 F.3d 788, 792 (7th Cir. 2014). Similarly, in this case, the officers had information confirming that there were others in the house but were not given any reason to believe those inside the home did not pose a threat to the officers. Consequently, it was reasonable to infer that a person posing a threat remained in the house.

*Buie* limits the scope of a protective sweep to a "cursory" inspection of spaces where individuals may be found and must last no longer than is necessary to dispel potential danger; it does not allow for a full search of the premises. 494 U.S. at 326. In determining whether the search was of a limited scope, courts should analyze "the configuration of the dwelling, the general surroundings, and the opportunities for ambush." *United States v. Starnes*, 741 F.3d 804, 808 (7th Cir. 2013). In this case, the close proximity between the closet and the front door as well as the fact that the doors adjoining these spaces were open made the officers susceptible to a potential ambush from individuals who might have been hiding in the northeast bedroom where the gun was ultimately found. An "ambush in a confined setting of unknown

configuration is more to be feared than if it were in the open, more familiar surroundings." *United States v. Richards*, 937 F.2d 1287, 1291 (7th Cir. 1991). The fact that the officers were unaware of the layout of the residence beforehand coupled with its intimate configuration justified a sweep through the residence that led them into the northeast bedroom.

Importantly, the officers limited their search to areas where an individual would have the ability to hide. The gun was found leaning against the wall of an open closet, directly in plain sight. The officers did not search any enclosed areas such as drawers or cabinets that would be unlikely to be harboring an individual. The only delay the officers undertook was to allow the two individuals found in the residence time to get dressed and step outside of the house. The search fits the scope of a protective sweep and was not conducted in any more detail than was necessary than to ensure the safety of the officers.[1]

Another exception that makes a warrantless search reasonable is the existence of exigent circumstances justifying entry. "Whether the exigent circumstances exception justifies warrantless action is judged by an objective standard: we ask

---

[1] This Court is not persuaded by the Government's assertion that the potential threat of additional pit bulls inside of the home qualified as a specific, articulable fact for the purposes of a protective sweep. The Government cites *U.S. v. Starnes*, where officers had direct information indicating that two aggressive pit bulls were inside of the house and only one had been subdued. 741 F.3d 804, 808 (7th Cir. 2013). The Government's reliance on this case is misplaced because Blackburn's report did not state that he had information about an additional aggressive pit bull inside the residence. The Court also does not agree with the Government's assertion that the strong smell of marijuana detected by officers indicated the possibility of a violent individual somewhere in the house. While federally, marijuana is still classified as a Schedule I Controlled Substance under the Controlled Substances Act, marijuana is now legal, albeit regulated, for medical and recreational use in the State of Illinois. There is no indication that Blackburn believed that illegal activity related to marijuana had occurred and there is no detail on whether he detected the smell of raw or smoked marijuana. However, the arguments related to these two issues are inconsequential to the Court's determination in this case.

whether it was reasonable for the police officers on the scene to believe, in light of the circumstances they faced, that there was a compelling need to act and no time to obtain a warrant." *Sutterfield v. City of Milwaukee* 751 F.3d 542, 557 (7th Cir. 2014). The recent Supreme Court case *Caniglia v. Strom* reinforced the idea that "law enforcement officers may enter private property without a warrant when certain exigent circumstances exist." *Caniglia v. Strom* 141 S.Ct. 1596, 1599 (2021).

Seventh Circuit precedent has illustrated the necessity for police officers to ensure the safety of children once their guardian is detained. "[T]he Constitution creates a duty on the part of police officers to protect minor children from immediate hazards after police officers arrest the children's guardian." *Ellsworth v. City of Racine* 774 F.2d 182, 185 (7th Cir. 1985). Importantly, Davis did not give the ages of the children inside the home nor state whether they could be exposed to any safety hazards inside the house. The officers recognized the compelling need to ensure the children's safety immediately. This pressing need, independent of the actions of the officers, qualifies as exigent circumstances justifying the warrantless search.

However, even if the initial search could be considered unlawful, Ewing-Jimerson subsequently consented to an entire search of the residence. A warrantless search is justified when someone with "actual and apparent authority" consents to the search. *United States. v. Aghedo* 159 F.3d 308, 310 (7th Cir. 1998). As the homeowner, Ewing-Jimerson possessed actual authority over the residence. But the consent must be voluntary and the Court must determine whether the entry tainted that consent.

The following factors are considered in determining whether consent is

voluntary: "(1) the age, education, and intelligence of the individual; (2) whether he was advised of his rights; (3) whether he was in custody; (4) how long the individual was detained prior to consenting; (5) whether consent was given immediately or after several requests; and (6) whether the officers used physical coercion." *United States v. Thompson*, 842 F.3d 1002, 1009-10 (7th Cir. 2016). Here, all of the factors favor a voluntary consent. Ewing-Jimerson, an adult homeowner, discussed consent with Blackburn at the kitchen table of the residence, provided oral and written consent to a search, signed a form indicating she had been informed of her constitutional rights, was not detained at any point during the discussion, and gave consent "without threats or promise of any kind." (Doc. 28-2, Doc. 28-3).

The factors relevant to determining whether the consent was tainted are "(1) the temporal proximity of the illegal entry and the consent, (2) the presence of intervening circumstances, and, particularly, (3) the purpose and flagrancy of the official misconduct." *United States v. Robles-Ortega*, 348 F.3d 679, 681 (7th Cir. 2003) (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)). In *United States v. Punzo*, the Seventh Circuit held that an occupant's consent was voluntary and untainted where "[t]he officers did not forcibly enter the house, [he] was not under arrest when he consented, and the officers did not threaten to secure a warrant if [he] refused to cooperate." 208 F. App'x 468, 472 (7th Cir. 2006). The intervening circumstance in this case was Ewing-Jimerson's arrival at the residence and her voluntary consent.

This case can be distinguished from *Robles-Ortega*, where police officers broke down the door and immediately requested the leaseholder's consent to a search while the officers had their guns drawn. *Id* at 680-681. In that case, the Court ruled that

the traumatic entry of the officers into the home coerced consent: no intervening circumstance existed. In this case, Ewing-Jimerson was not coerced into providing consent under traumatic circumstances.

Finally, there is no evidence that the officers purposefully violated Davis's Fourth Amendment rights. As articulated earlier, the officers conducted a search of the house to retrieve individuals identified by Davis, to ensure both their own safety as well as that of the individuals. Blackburn indicated that based on his training and experience, individuals had been known to hide behind closet doors and under beds and tables (Doc. 28-1). His decision to perform a search was rooted in his training and experience and not as an intentional violation of the Fourth Amendment.

The Supreme Court has articulated that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Georgia v. Randolph* 547 U.S. 103, 120 (2006). Throughout this entire incident, Davis was present at the residence but never provided an express refusal to search – he only commented about his gun after the search was conducted. Furthermore, he was not present when Ewing-Jimerson offered her consent. The Court concludes that Ewing-Jimerson's consent was voluntary and untainted by the search and that Davis never expressly objected to the search.

## CONCLUSION

The warrantless search conducted in this case was lawful. Furthermore, Ewing-Jimerson provided voluntary and untainted consent to the officers. For these

reasons, the Court **DENIES** the Motion to Suppress Evidence (Doc. 25) filed by Defendant Paige R. Davis.

**IT IS SO ORDERED.**

**DATED:**   **July 20, 2021**

s/ <u>*Stephen P. McGlynn*</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**