IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 21-CR-30036-SPM |
| PAIGE R. DAVIS, | |
| Defendant. | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Compassionate Release filed by Defendant Paige R. Davis. (Doc. 63). For the reasons set forth below, the motion for Compassionate Release is **DENIED**.

### FACTUAL & PROCEDURAL BACKGROUND

In 2021, Davis was charged with felon in possession of a firearm under 18 U.S.C. § 922(g)(1). (Docs. 1, 31). He pleaded guilty and was sentenced to 87 months of imprisonment and three years of supervised release. (Doc. 44, p. 2).

In February 2022, Davis filed the instant motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (*See* Doc. 63). Davis alleged that his medical conditions, including Chronic Myeloid Leukemia ("CML") resulting in an enlarged spleen, cause him pain and discomfort. Additionally, Davis alleged his chemotherapy pills cause side effects which include shortness of breath, irregular heartbeat, muscle spasms, and mental health concerns. (Doc. 63, pp. 14, 18). Further, Davis argued COVID-19 and the lethality that infection may pose to someone with

his current medical conditions justified compassionate release. (Doc. 63, p. 19).

## APPLICABLE LAW

Prior to the passage of the First Step Act, a defendant seeking compassionate release first had to request it from the Bureau of Prisons ("BOP") Director. 18 U.S.C. § 3582(c)(1)(A) (2018). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion after exhausting administrative rights to appeal a failure of BOP to bring a motion on their behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

After such a motion is filed, either by the Director of BOP or by the defendant, the Court may reduce the term of imprisonment after considering the factors set forth in § 3553(a) to the extent they are applicable, upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

The applicable policy statement can be found at U.S.S.G. § 1B1.13. While the policy statement essentially restates § 3582(c)(1)(A), the Application Notes to the policy statement sets forth specific circumstances under which extraordinary and compelling reasons exist for reducing a sentence: (A) the medical condition of the defendant; (B) the age of the defendant (over 70), and (C) family circumstances. U.S.S.G. § 1B1.13. A fourth category, "(D) Other Reasons," states: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an

extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* Additionally, the policy statement requires the defendant not be "a danger to the safety of any other person or to the community" pursuant to 18 U.S.C. § 3142(g).

A number of courts have confronted the issue of whether—in light of the First Step Act and its grant of authority to defendants to file their own compassionate release motion—the "catch-all" provision of Subsection D is still limited only to BOP Director's determination of whether other extraordinary and compelling circumstances exist or whether a court may make that determination. The Seventh Circuit Court of Appeals has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *See U.S. v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). "The movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

## ANALYSIS

It is uncontested that Davis has exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A). Davis alleged two extraordinary and compelling reasons warranting a sentence reduction in his Motion for Compassionate Release. (*See* Doc. 63).

First, Davis alleged his CML causes serious discomfort and pain. (*See* Doc. 63). It is uncontested that the Defendant's 2023 medical records confirm he has CML. (*See* Doc. 66, p.9). CML is an uncommon type of cancer of the bone marrow, it causes the

body to produce an increased number of white blood cells.[1] Unlike most cancers, CML is assigned a phase as opposed to a stage due to the absence of tumors. The number of immature white blood cells in the blood or bone marrow determines the phase of a patient's CML. Davis was diagnosed with the blast phase which is an acute phase defined by the presence of 20 percent or more blast cells in blood samples, large blast clusters in the bone marrow, and blast cells which have spread to tissues and organs beyond the bone marrow.[2] (*See* Doc. 66-1, p.4). In addition, he has developed an enlarged spleen (splenomegaly). Which, according to the National Library of Medicine, can cause a feeling of fullness and loss of appetite.[3]

According to the Leukemia & Lymphoma Society, in the last twenty years there have been strides in medical development making it so "patients can expect to live life-spans nearly as long as normal healthy adults."[4] Davis has routinely received treatment from BOP Health Services, and his medical records show that his condition has been adequately treated by BOP. (*See* Doc. 66-1). The Seventh Circuit has held that when a condition is adequately being treated it cannot serve as an extraordinary and compelling reason for sentence reduction. *See United States v. Proctor*, 2022 WL 1261762, at *1 (7th Cir. 2022). Since 2015, doctors have prescribed the leading CML drugs, Imatinib (Gleevec) and Dasatinib (Sprycel), to Davis.[5] (*See* Doc. 66-1, p. 61).

---

[1] *See* https://www.mayoclinic.org/diseases-conditions/chronic-myelogenous-leukemia/symptoms-causes/syc-20352417 (last visited July 10, 2023)
[2] *See* https://www.cancer.org/cancer/types/chronic-myeloid-leukemia/detection-diagnosis-staging/staging.html#:~:text=Blast%20phase%20(also%20called%20acute%20phase%20or%20blast%20crisis)&text=Large%20clusters%20of%20blasts%20are,lot%20like%20an%20acute%20leukemia. (last visited July 10, 2023)
[3] https://medlineplus.gov/genetics/condition/chronic-myeloid-leukemia/
[4] *See* https://www.lls.org/research/chronic-myeloid-leukemia-cml#:~:text=Today%2C%20the%20ten%20year%20survival,of%20imatinib%20made%20this%20happen. (last visited July 11, 2023)
[5] *See* https://www.cancer.gov/research/progress/discovery/gleevec (last visited July 10, 2023)

Unfortunately, Davis is positive for the BCR-ABL1 gene, and certain drugs such as Gleevec and Sprycel are ineffective.[6] Bosulif, otherwise called Bosutinib, is a CML drug typically prescribed to patients who have not responded well to other drugs. Bosulif was prescribed to Davis on January 20, 2023, by the Florida Cancer Specialist - Leesburg South.[7] (*See* Doc. 66-1, p. 15). Davis has regular lab tests and visits with specialists regarding his CML. (*See* Doc 66-1). Considering Davis' routine visits with medical professionals, subsequent prescriptions, and multiple lab tests, any argument that adequate care has not been provided would go against the leading medical knowledge on CML treatment.

Moreover, Davis' CML has been present since 2014, years prior to and during the time of his sentencing on October 29, 2021. (*See* Doc. 66-1). Consequently, the Court was aware of his condition and considered such during sentencing. *See* § 3553 (a)(2)(D) (need for medical care). Thus, Davis' condition cannot reasonably serve as an extraordinary and compelling reason for sentence reduction without, in effect, challenging the merits of the sentence itself.

Second, Davis alleged that his imprisonment increases the danger of COVID-19. However, vaccinated prisoners are not at a higher risk of COVID-19 due to the protections that vaccines provide. *See United States v. Broadfield*, 5 F.4th 801, 802 (7th Cir. 2021). Prisoners who have access to a vaccine are unable to use the risk of COVID-19 to obtain compassionate release. *See United States v. Clemons*, No. 21-

---

[6] *See* https://medlineplus.gov/lab-tests/bcr-abl-genetic-test/ (July 11, 2023)
[7] *See* https://www.mayoclinic.org/drugs-supplements/bosutinib-oral-route/description/drg-20075783 (last visited, July 11, 2023)

2440, 2022 WL 1436801, at *1 (7th Cir. May 6, 2022) (citing *Broadfield*, 5 F.4th at 802-03). Davis has been fully inoculated and boosted against COVID-19 and did not allege any inability to access protective measures against COVID-19. The Seventh Circuit has held that "vaccines offer far more relief than a judicial order." *See Broadfield*, 5 F.4th at 803. Therefore, Davis' argument that incarceration increases his susceptibility to COVID-19 and that contracting it would be lethal in conjunction with his CML diagnosis is not persuasive.

Moreover, BOP reports that USP-Coleman II is currently a level 1 operation.[8] USP-Coleman II currently has vaccinated 757 staff members and over 5000 inmates onsite.[9] The facility has 1 COVID-19 positive staff member and 374 positive inmates; despite this, COVID-19 recovery rate is high, and only 2 inmate deaths are reported. BOP updates this data daily and follows modified operations to maintain safety in facilities.[10] Under these circumstances, the Court finds Davis' arguments for USP Coleman II's ill treatment of COVID-19 unpersuasive and not an extraordinary and compelling reason for compassionate release.

Finally, the Court considers the nature of the Defendant's past criminal charges and evaluates his risk of recidivism. The nature of his prerequisite offense in his conviction as a felon in possession of a firearm pursuant to § 922(g)(1) would provide relevant information. The Presentence Investigation Report states that on or

---

[8] *See* https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited June 27, 2023) (Level 1 indicates a medical isolation rate of <2% and new community positive cases <100 per 100,000 over the last 7 days. This is the lowest operational level)
[9] *See* https://www.bop.gov/coronavirus/covid19_statistics.html# (last visited June 27, 2023)
[10] *See* https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited June 27, 2023)

about December 8, 2020, Davis possessed a firearm "knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, namely: Aggravated Battery, on or about November 6, 2018." (*See* Doc. 39, p. 3). The offense was dangerous, police responded to a hit-and-run vehicle accident and discovered Davis nearby who "approached [a] deputy and swung his left arm, striking the deputy and knocking his flashlight to the ground." (*See* Doc. 39, p. 11). Further investigation into Davis' criminal history reveals that this is not his first violent offense.

Beginning in 1996, with one count of Arson, one count of Burglary, and one count of Aggravated Battery, Davis established a record of dangerous criminal behavior. Throughout the years, he has been responsible for many serious offenses including Unlawful Possession of a Controlled Substance (1997), Battery (1999, 2005, and 2013), Resisting a Peace Officer (1999 and 2004), Home Invasion (2005), Aggravated Robbery (2005), Unlawful Restraint (2005), Felon in Possession of a Firearm (1999, 2013, and 2020), Aggravated Battery (2018), and Aggravated Assault (1999). (*See* Doc. 39). Although Davis has served time in prison, his incarceration did not deter him from reoffending.

The dangerous nature of this offense and the violent nature of his criminal history weigh in favor of denying the instant motion. *See* 18 U.S.C. § 3553(a)(1). Davis has served only 2 years of his 7-year sentence, and upon weighing the limited, corrective impact of his previous penalties, the Court believes Davis will benefit from further rehabilitation.

Unrelated to the Motion for Compassionate Release, Davis claimed that his sentence was unlawfully enhanced due to his possession of marijuana at the time of arrest. (Doc. 63, p. 13). This allegation is a challenge to his sentence separate from extraordinary and compelling reasons for compassionate release. A motion for compassionate release is not the proper avenue for reviewing the constitutionality of a sentence. *See* 18 U.S.C. § 2255. Moreover, "prisoners cannot use motions for compassionate release to remedy supposed errors in conviction or sentence." *United States v. Smith*, No. 22-1958, 2022 WL 17075004, at *2 (7th Cir. Nov. 18, 2022) (citing *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021).

## CONCLUSION

Given Davis' criminal history, the current COVID-19 conditions in USP-Coleman II, the *Broadfield* rule as applied here, and Davis' adequate treatment, the Court finds Davis has not demonstrated an extraordinary or compelling reason for sentence reduction under the First Step Act.

For the reasons set forth herein, Davis' Motion for Compassionate Release (Doc. 63) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  July 13, 2023**

s/ *Stephen P. McGlynn*
STEPHEN P. McGLYNN
**U.S. District Judge**
